UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MARIE SEARLES, | ) |
| Plaintiff, | ) |
| v. | ) |
| TROOPER HUNTER BELANGER, in his individual capacity | ) Civil No. _____ |
| and | ) |
| TROOPER AARON TURCOTTE, in his individual capacity, | ) |
| Defendants. | ) |

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff, Marie Searles, by and through undersigned counsel, and hereby complains against Defendants Maine State Police Trooper Hunter Belanger and Maine State Police Lieutenant Aaron Turcotte, as follows:

## **INTRODUCTION**

1. This is a civil rights case challenging Trooper Hunter Belanger's unreasonable seizure of and use of excessive force against Marie Searles. Trooper Belanger arrested Searles without reason or probable cause. During her arrest, Trooper Belanger body-slammed Searles to the ground at a time when she did not pose a risk to Trooper Belanger or anyone else. He later slammed her body onto the hood of his cruiser when Searles was illegally detained in handcuffs. Trooper Belanger's supervisor, Lieutenant Aaron Turcotte allowed

1

Belanger to get away with similar conduct approximately two months before he assaulted Searles when he used excessive force against another arrestee in front of multiple experienced law enforcement officers, some of whom complained about Belanger's actions to Lt. Turcotte and/or supervisors of Lt. Turcotte who would have shared these complaints with Lt. Turcotte. Over the last decade, the Maine State Police have substantiated zero complaints of excessive force despite receiving 33 complaints of excessive force. Lt. Turcotte's failures to supervise and discipline Trooper Belanger and others created a culture of tacit approval of excessive force.

## PARTIES

2. Plaintiff Marie Searles (hereinafter "Searles") is a resident of Chelsea, Maine.

3. Defendant Trooper Hunter Belanger (hereinafter "Trooper Belanger") is a trooper for the Maine State Police.

4. Trooper Belanger, sued in his individual capacity, was a Maine State Police Trooper and acted under color of state law at all times relevant to this Complaint.

5. Defendant Lieutenant Aaron Turcotte (hereinafter "Lt. Turcotte") is a Lieutenant for the Maine State Police.

6. Lt. Turcotte, sued in his individual capacity, was a Maine State Police Troop D Commander and acted under color of state law at all times relevant to this Complaint.

## JURISDICTION

7. This action seeks to vindicate rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution, and it is brought pursuant to 42 U.S.C. § 1983.

8. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because

this action arises under federal law. Jurisdiction is also authorized pursuant to 28 U.S.C. § 1343(a)(3).

9. Venue in this Court is proper under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred within this judicial district and because the Defendants are subject to personal jurisdiction in this District.

## STATEMENT OF FACTS

10. On March 10, 2024, Trooper Belanger was dispatched to 79 Marie Lane in Chelsea for report of a vehicle stuck in a muddy driveway.

11. The weather was cold and rainy during the events described in the Complaint.

12. He knew the address was associated with Michael Griffin, who was wanted on outstanding arrest warrants.

13. After addressing the vehicle stuck in the mud, he approached a camper located at 79 Marie Lane "to locate Griffin."

14. Trooper Belanger was unable to determine whether Griffin was present in the home.

15. When standing at the door of 79 Marie Lane, Trooper Belanger claimed he saw "hypodermic apparatuses, cut straws, and spoons discarded in a manner to appear they were thrown out the door" in addition to "discarded suboxone wrappers throughout the property."

16. Trooper Belanger returned to his cruiser to draft a search warrant for 79 Marie Lane based on his observations and suspicion that illegal drugs and/or Michael Griffin were present inside 79 Marie Lane.

17. Trooper Belanger's cruiser was parked at the end of gravel driveway where multiple residences were located.

18. At least one other trooper was present at the same location.
19. Searles was walking outside the residences by the location of Trooper Belanger's cruiser at the time he was preparing a search warrant for the camper.
20. Searles walked away from Trooper Belanger's cruiser.
21. Trooper Belanger asked Searles to come speak with him.
22. Searles walked away from Trooper Belanger.
23. Trooper Belanger grabbed ahold of Searles, flipped her body up into the air, and slammed her body onto the ground.
24. Trooper Belanger pinned Searles neck to the ground with his knee resulting in pain and bruising to Searles' neck.
25. After arresting Searles for allegedly refusing to submit to arrest or detention, Trooper Belanger searched her body at the front of his cruiser.
26. While pat-searching Searles, Trooper Belanger touched Searles' body causing her to tense up and pull away.
27. Trooper Belanger responded by grabbing Searles by her shoulders and slamming her body onto the hood of his cruiser.
28. Searles ribs were slammed into the front of Trooper Belanger's cruiser resulting in significant pain and bruising.
29. Trooper Belanger's use of force in arresting and searching Searles following her arrest was unreasonable.
30. Trooper Belanger failed to follow his training when he resorted to such excessive force given the circumstances and prior to using lesser forms of force.
31. Maine State Police, including Lt. Turcotte, knew or should have known that Trooper

Belanger engaged in unreasonable arrests and excessive uses of force in the past, including but not limited to on January 17, 2024.

32. On January 17, 2024, Trooper Belanger responded to an arson complaint in Readfield.

33. Multiple law enforcement agencies, including the Kennebec County Sheriff's Office, Winthrop Police Department, Monmouth Police Department, and the State Fire Marshal's Office were on scene with the suspect.

34. The suspect was cooperating with law enforcement and walking out of the woods during the winter to be seen by emergency medical services.

35. The suspect was not in handcuffs.

36. Upon seeing the suspect, Trooper Belanger told the suspect to "turn around and put your hands behind your back."

37. Trooper Belanger went hands-on with the suspect within 1-2 seconds of his command before giving the suspect the opportunity to respond in any way.

38. Trooper Belanger placed the suspect's hand in a painful restraint position and forced him onto the snowy ground.

39. The suspect repeated he was doing nothing wrong and not resisting as he was pinned to the ground face down and Trooper Belanger placed him in handcuffs.

40. Trooper Belanger then walked away from the suspect, leaving him on the ground, requiring other law enforcement officers present to assist the suspect back up and continue bringing him to be seen by emergency medical services.

41. Trooper Belanger's unreasonable detention and excessive use of force against the suspect was witnessed by multiple law enforcement agencies and recorded on body-worn cameras.

42. Law enforcement agencies present complained about Trooper Belanger's conduct following his conduct.

43. A fellow trooper was present for Trooper Belanger's conduct.

44. The prosecuting attorney for the district where this conduct occurred wrote a complaint to Captain Jeff Love of the Maine State Police on or about March 19, 2024 about Trooper Belanger's conduct describing it as "completely inappropriate conduct."

45. Trooper Belanger's completely inappropriate conduct from January 17, 2024 and inter-agency complaints about it were known or should have been known by Trooper Belanger's supervisors at Maine State Police, including Lt. Turcotte, before his unreasonable arrest and use of excessive force against Searles on March 10, 2024.

46. Upon information and belief, Maine State Police have engaged in a long-standing practice of failing to properly investigate and discipline troopers in cases of excessive force and implicitly authorized, approved, or knowingly acquiesced in unconstitutional acts of excessive force, including Trooper Belanger's actions described herein.

47. Maine State Police reported 33 complaints of excessive force for a ten-year period from 2015 to 2024.

48. Maine State Police investigations found all 33 complaints "to be either unfounded or the trooper was exonerated."

49. Upon information and belief, these unfounded and exonerated claims include Trooper Belanger's excessive force reported by the prosecuting attorney identified herein from January 17, 2024.

## FIRST CAUSE OF ACTION
### Violation of 42 U.S.C. § 1983—Unlawful Arrest in Violation of the Fourth Amendment of the United States Constitution
### (Searles v. Belanger)

50. Searles reasserts and realleges the allegations in paragraphs 1-49.

51. Searles has a Fourth Amendment right to be free from unreasonable seizures, including arrest except when a law enforcement officer is aware of facts and circumstances, based on reasonably trustworthy information, that would warrant an ordinarily prudent and cautious law enforcement officer to believe Searles did commit or was committing a crime.

52. Trooper Belanger, while acting under color of state law, detained and/or arrested Searles without any facts or circumstances that Searles committed or was committing a crime.

53. Trooper Belanger was permitted to secure the camper pending his search warrant by prohibiting Searles from reentering the camper.

54. Trooper Belanger was not permitted to detain or arrest Searles.

55. Searles' Fourth Amendment right to be free from unlawful detainer and/or arrest without probable cause was clearly established at the time of her arrest.

56. Trooper Belanger's detention and/or arrest of Searles under the circumstances was made with actual malice, recklessness and/or callous indifference to her constitutionally protected rights

## SECOND CAUSE OF ACTION
### Violation of 42 U.S.C. § 1983—Excessive Use of Force in Violation of the Fourth Amendment of the United States Constitution
### (Searles v. Belanger)

57. Searles reasserts and realleges the allegations in paragraphs 1-56.

58. Searles has a Fourth Amendment Right to be free from unreasonable seizures of her person, including unreasonable seizures in the form of excessive use of force.

7

59. Trooper Belanger, while acting under color of state law, seized Searles without any facts or circumstances that Searles was committing a crime and exceeded the bounds of reasonable force when seizing Searles.

60. Searles' Fourth Amendment right to be free from unreasonable use of force was clearly established at the time of her detention and/or arrest.

61. Trooper Belanger's level of force was objectively unreasonable under the circumstances and that unreasonable use of force violated Searle's Fourth Amendment right to be free from unreasonable seizure of her person.

62. Trooper Belanger's excessive use of force against Searles under the circumstances was made with actual malice, recklessness and/or callous indifference to her constitutionally protected rights.

### THIRD CAUSE OF ACTION
**Violation of 42 U.S.C. § 1983—Failure to Supervise and Discipline**
**(Searles v. Aaron Turcotte)**

63. Plaintiff repeats and realleges the allegations in Paragraphs 1-62 as if set forth fully herein.

64. At all times relevant to this Complaint, Lt. Aaron Turcotte was the Troop Commander for Troop D and Trooper Hunter Belanger.

65. Lt. Turcotte received notice of excessive force complaints against Trooper Belanger, including at least one complaint from January 17, 2024 from a local prosecutor.

66. Lt. Turcotte failed to act on the Complaint from January 17, 2024.

67. Lt. Turcotte's failure to act was tacit approval and official acquiescence of Trooper Belanger's excessive use of force.

68. Lt. Turcotte's failure to appropriately investigate, supervise, and discipline Trooper

Belanger sent the message to Trooper Belanger and other troopers that excessive use of force would be allowed in Troop D.

69. Lt. Turcotte knowingly failed to adequately investigate claims of excessive force in Troop D, including the January 17 incident.

70. Lt. Turcotte failed to adequately supervise Trooper Belanger following the January 17 incident.

71. Lt. Turcotte failed to appropriately discipline Trooper Belanger following the January 17 incident.

72. Lt. Turcotte's failure to supervise Trooper Belanger in the form of investigating claims of excessive force and failure to discipline Trooper Belanger for uses of excessive force against arrestees was done knowingly and/or with deliberate indifference to the rights of Maine citizens, including Searles.

73. Lt. Turcotte encouraged Trooper Belanger's violations of Searle's constitutional rights by knowingly failing to properly investigate and disciple Trooper Belanger for similar constitutional violations committed before March 10, 2024.

74. Lt. Turcotte's failure to investigate and discipline Trooper Belanger was tacit approval and knowing acquiescence in the use of excessive force by Trooper Belanger.

75. Lt. Turcotte's failure to investigate and discipline Trooper Belanger was a direct cause of Trooper Belanger's violation of Searles' constitutional rights as alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Marie Searles, respectfully prays that this Honorable Court:

1. Enter judgment in her favor awarding compensatory and punitive damages, plus pre-judgment and post-judgment interest;

2. Award her reimbursement costs of suit, including reasonable attorney fees and other litigation costs incurred in bringing this action pursuant to 42 U.S.C. § 1983.

3. Grant such further relief as the Court may deem just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL CLAIMS IN HER COMPLAINT SO TRIABLE AS OF RIGHT**.

Dated: October 2, 2025

<u>/s/ Matthew D. Morgan</u>
MATTHEW D. MORGAN, ESQ.
Bar Number: 5044
Attorney for Plaintiff
McKee Morgan, LLC, P.A.
133 State Street
Augusta, Maine 04330
 (207) 620-8294
mmorgan@mckeemorgan.com


<u>/s/Kurt C. Peterson</u>
KURT C. PETERSON, ESQ.
Bar No. 6235
McKee Morgan, LLC, P.A.
133 State Street
Augusta, ME.   04330
(207) 620-8294
kpeterson@mckeemorgan.com